UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LISA B. VAUGHN,

        Plaintiff,

   v.                                        CAUSE NO. 2:20-CV-054 DRL

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

        Defendant.

## ORDER & OPINION

Lisa B. Vaughn appeals from the Social Security Commissioner's final judgment denying her supplemental security income. Ms. Vaughn requests remand of her claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court grants Ms. Vaughn's request and remands the Commissioner's decision.

## BACKGROUND

Ms. Vaughn suffers from a variety of physical and mental health impairments. Ms. Vaughn's physical impairments include obesity, respiratory disorder, and spine disorder [R. 17]. Ms. Vaughn also suffers from the non-severe physical impairments of migraine headaches and vertigo [R. 18], and the mental impairment of anxiety [R. 18]. Ms. Vaughn went to school through ninth grade and has past relevant work as a server, fast food worker, and deli worker [R. 25, 41].

Ms. Vaughn filed a Title XVI application for benefits on August 30, 2016, which was denied initially on November 23, 2016, and again upon reconsideration on July 7, 2017 [R 15]. Her claims were heard by an Administrative Law Judge (ALJ) in a hearing on September 12, 2018 [*Id.*]. In a January 22, 2019 decision, the ALJ denied Ms. Vaughn's petition on the basis that she couldn't show that she was disabled as defined by the Social Security Act [R. 26].

The ALJ found that Ms. Vaughn has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. §416.967(b) with the following limitations: she can occasionally climb ramps and stairs, as well as occasionally balance, stoop, kneel, and crouch [R. 20]; she can occasionally work in humidity and wetness, occasionally work around dangerous machinery with moving mechanical parts, and occasionally work in dust, odors, fumes, and pulmonary irritants [*Id.*]; she can never climb ladders, ropes, or scaffolds, never crawl, never work at unprotected heights, and never work on uneven terrain or slippery surfaces [*Id.*]; and, she must shift positions or alternate between sitting and standing every 30 minutes for one to two minutes at a time while remaining on task [*Id.*]. The ALJ found that Ms. Vaughn could not perform any of her past relevant work [R. 25]. However, the ALJ found that she could perform a significant number of jobs in the national economy [*Id.*]. This decision became final when the Appeals Council denied Ms. Vaughn's request for review [R. 1].

## STANDARD

The court has authority to review the Council's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant cannot perform other work in the economy. *See Young*, 957 F.2d at 389.

Ms. Vaughn challenges the ALJ's conclusions that she is not totally disabled. She advances three arguments of error: (1) the ALJ erred in the RFC determination; (2) the ALJ erred in analyzing Ms. Vaughn's subjective symptoms; and (3) the ALJ erred in weighing medical opinion evidence. The court addresses these issues in turn.

The ALJ determined that Ms. Vaughn could perform light work with a number of limitations, including a sit/stand option that allowed her to shift positions or alternate between sitting and standing for one to two minutes, every thirty minutes, while remaining on task [R. 20]. Ms. Vaughn says the ALJ didn't support the sit/stand option with any evidence in the record.

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). Determination of an RFC is a legal decision rather than a medical one. *See Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day,

for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 SSR LEXIS 5, 1 (July 2, 1996). In determining the RFC, the ALJ must consider all medically determinable impairments, mental and physical, even those that are non-severe. 20 C.F.R. §§ 404.1545(a)(2); *see also Craft*, 539 F.3d at 676.

Ms. Vaughn asserts that the ALJ didn't provide proper evidence or discussion as to why shifting positions for 1-2 minutes every thirty minutes would be enough of a reprieve for her to continue working for another thirty minutes. The ALJ didn't discuss or analyze Ms. Vaughn's need for a sit/stand option, nor did he provide the requisite logical bridge to explain how he arrived at this conclusion. The ALJ didn't cite to any medical opinion, treatment notes, or testimony that support the sit/stand option as stated in the RFC.

To the contrary, Ms. Vaughn testified that she could only stand for 20-30 minutes at a time if she was permitted to move around, and that she could only sit for 5-10 minutes at a time [R. 44]. She also stated that she needed opportunities to lie down, but that she could only lie down for 20 minutes before needing to shift positions again [R. 45]. Both Dr. Smejkel, the consultative examiner, and Ms. Vaughn's mother, Ms. Wojnarowicz, noted that Ms. Vaughn couldn't stand or walk for long periods of time [R. 208, 316]. Neither Ms. Vaughn nor any doctor opined that shifting positions for 1-2 minutes would allow her to continue working from one position for 30 minutes.

Accordingly, the case must be remanded. It remains unclear how the evidence either supports the sit/stand in the RFC or whether the evidence warrants a different sit/stand option. *See Diaz v. Berryhill*, 2018 U.S. Dist. LEXIS 165834, 23-24 (N.D. Ind. Sept. 27, 2018) (remanding when ALJ failed to explain "what she relied on or how she arrived at the calculation for the sit-stand option") (citing *Williams v. Berryhill*, 2017 U.S. Dist. LEXIS 114734, 24 (N.D. Ill. July 24, 2017) ("the ALJ did not explain what support she relied on or how she arrived at the calculations for the sit-stand option" or what medical evidence supported that a break "would be necessary after 30 minutes (as opposed to earlier or later), or why a 1-2 minute break (rather than a longer one) would be adequate.")). Because

the ALJ didn't explain the basis for the limitation, the court cannot trace his reasoning. *See Hurley v. Colvin*, 2014 U.S. Dist. LEXIS 30969, 42 (N.D. Ind. Mar. 10, 2014) (remanding when ALJ provided "no explanation as to why [claimant] only required a standing option of 5 to 10 minutes, as opposed to 15, 20, or 30 minutes or even a sit/stand at-will option" and no "treating, examining, or reviewing physicians indicated what amount of time would fully accommodate [the claimant's] pain"). This isn't to say that the ALJ must alter the RFC on remand, but rather that the ALJ should properly explain how he came to the sit/stand option. *See id.* at 43. ("On remand, should the ALJ impose the same RFC, [he] shall explain the evidentiary basis for this exertional limitation.").

The Commissioner argues that this case is similar to *Prater v. Saul*, 947 F.3d 479 (7th Cir. 2020). However, *Prater* is vastly different. There, the claimant argued that the RFC was vague in that it didn't properly explain whether the sit/stand option only allowed her to shift positions every thirty minutes, or whether she could alternate between sitting and standing at will. *Prater*, 947 F.3d at 481. In *Prater*, the circuit determined that there was no ambiguity. *Id.* at 482. That differs from this case. Here, the ALJ didn't support the sit/stand option with evidence. It's not that it's vague; it's that it's unsupported on this record.

This error also draws into question the vocational expert's testimony. The vocational expert testified that a person could only be off task for three minutes per every hour of work. If the evidence in the record supports a more limiting sit/stand option, the vocational expert's testimony may well alter the determination of disability or no disability.

Ms. Vaughn also asserts that the ALJ didn't analyze the effects of her obesity and respiratory disorder, both considered severe impairments, especially in combination with her other impairments. An ALJ must "consider the exacerbating effects of a claimant's obesity on her underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. Appx. 617, 623-24 (7th Cir. 2008). The ALJ only mentions Ms. Vaughn's obesity in

5

two places in the decision. In discussing the Listings, the ALJ notes that he has "fully considered obesity in the context of the overall record evidence in making this decision" [R. 20]. Then further in the decision, when discussing a medical treatment record, the ALJ acknowledges that "claimant was obese" [R. 22]. The ALJ didn't acknowledge Ms. Vaughn's obesity anywhere else in the decision, nor its possible effects on her degenerative disc disease or respiratory impairments.

The record shows that Ms. Vaughn is morbidly obese (that is, she has a BMI above 40), with her BMI ranging at times from 43.9-47.78 [R. 315, 496]. SSR 02-1p[1] discusses how the ALJ should consider obesity in the RFC assessment, and it notes that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-01p, 2002 SSR LEXIS 1, 17 (Sept. 12, 2002). Ms. Vaughn doesn't suffer from arthritis, but suffers from degenerative disc disease, which also is affected by further stress on the spine due to weight. The ALJ didn't discuss how Ms. Vaughn's obesity in combination with her degenerative disc disease may cause more pain than the objective medical evidence might present.

The Commissioner improperly argues that no doctor found Ms. Vaughn to be disabled due to her obesity. That's not the proper focus. The ALJ is to consider how obesity, in combination with her other impairments such as degenerative disc disease and respiratory impairments, might affect her ability to sustain work or might impact her subjective complaints of pain. The ALJ didn't offer such a discussion, and he must do so on remand. As the Commissioner discusses in his brief, there are multiple mentions of Ms. Vaughn's obesity in the record, yet the ALJ didn't discuss any of them in this vein. The ALJ also didn't rely on any medical opinion that considered Ms. Vaughn's obesity. On remand, the ALJ should properly discuss Ms. Vaughn's obesity in combination with her other impairments. The ALJ's lack of discussion regarding Ms. Vaughn's obesity in combination with her

---

[1] SSR 02-1p has been rescinded and replaced by SSR 19-2p. However, SSR 19-2p is only effective for claims filed after May 20, 2019. Therefore, SSR 02-1p is applicable in this case.

other impairments is especially important when the ALJ didn't discuss her need for a sit/stand option in the RFC. It is possible that Ms. Vaughn's obesity, in combination with her degenerative disc disease, would have some effect on the sit/stand option.

Finally, Ms. Vaughn asserts that the ALJ erred in analyzing her subjective symptoms. An ALJ follows a two-step process to evaluate a claimant's subjective complaints. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(a-b), 416.929(a-b); SSR 16-3p, 2016 SSR LEXIS 4, 3. Second, once the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. §§ 404.1529(a), 416.929(a). Because an ALJ is in the best position to evaluate the credibility of a witness, the ALJ's consideration of a claimant's symptom testimony is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and he articulates his analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 10002 (7th Cir. 1988) (citation omitted), creating 'an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), his determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The Code of Federal Regulations lists many factors an ALJ should consider when evaluating a claimant's symptoms, including pain. *See* 20 C.F.R. § 416.929(c). These factors include the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. §§ 416.929(c)(1-3).

Ms. Vaughn claims that the ALJ applied the wrong standard in analyzing her subjective complaints. The ALJ stated that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [R. 21]. Ms. Vaughn argues that it is incorrect to require that her symptoms be "entirely" consistent with the medical evidence.

The correct standard to apply is whether a claimant's allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a); *Minger v. Berryhill*, 307 F. Supp.3d 865, 871 (N.D. Ill. 2018). Some courts have found the ALJ's boilerplate problematic. *See id.*; *Bancolita v. Berryhill*, 312 F. Supp.3d 737, 744 (N.D. Ill. 2018). But several courts have decided that the inclusion of such language alone doesn't necessitate remand. *See Giboyeaux v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 14868, 11 (N.D. Ind. Jan. 9, 2020) (Collins, J.) (collecting cases); *see also Oliver v. Saul*, 2020 U.S. Dist. LEXIS 55894, 11 (N.D. Ind. Mar. 31, 2020) (Kolar, J.) ("This language is not necessarily fatal so long as the ALJ fully explains his decision and a 'commonsensical reading' of the entire decision suggests no error."). That said, the ALJ made other errors in the subjective symptom determination here.

Though the ALJ details both the objective evidence and Ms. Vaughn's subjective symptoms, there is little discussion of Ms. Vaughn's subjective symptoms in comparison to the rest of the

8

evidence in the record. The ALJ states that "physical findings fail to reveal a debilitating impairment, and indicate that she could perform work within the above residual functional capacity evaluation" [R. 21]. This is followed by two instances in August and September 2016, when Ms. Vaughn complained of back pain, but physical examinations revealed no tenderness [R. 22]. The ALJ then states that Ms. Vaughn's symptoms have improved with conservative treatment [R. 23]. The ALJ goes on to state that although she has limited range of motion due to pain, straight leg raising testing has been negative, and Ms. Vaughn continues to have full strength in all extremities [*Id.*].

Ms. Vaughn argues that the ALJ improperly relied on objective medical evidence to reject her statements regarding the intensity and persistence of her pain. 20 C.F.R. § 416.929(c)(2). Complaints of pain "need not be confirmed by diagnostic tests," *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015); *see also Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015) (a "recurrent error" made by ALJs is "discounting pain testimony that can't be attributed to 'objective' injuries or illnesses"). The ALJ relied on physical examinations to reject Ms. Vaughn's subjective symptoms. Relying solely on physical examinations is improper. The ALJ provides no discussion of Ms. Vaughn's subjective symptoms, yet he dismisses them for not being consistent with physical examinations. The ALJ also states that Ms. Vaughn's symptoms improved with conservative treatment [R. 23]. However, Ms. Vaughn continued to seek treatment for her pain despite supposed improvement, which the ALJ didn't acknowledge [R. 260, 272, 274, 292, 336-48, 429-34, 445-76, 578].

Finally, the ALJ didn't discuss all of the relevant factors in 20 C.F.R. § 416.929(c). Specifically, the ALJ didn't discuss Ms. Vaughn's daily activities and her limitations with which she performed them. For instance, Ms. Vaughn testified that she had to take breaks when climbing the stairs to her second-story apartment, that she can only walk a block, that she has to mop and sweep from a seated position in a chair, and that she cannot do her own laundry [R. 37, 43, 46]. She also stated that she couldn't do grocery shopping alone and required her daughter's help [R. 201]. Though the ALJ listed

9

some of this evidence in his decision, he didn't adequately discuss it. Without any analysis of how subjective complaints or limitations in daily activities are either consistent or inconsistent with specific portions of evidence in the medical record, there is no "logical bridge" between the evidence and the ALJ's conclusion, requiring remand. *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir. 2011) ("the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."). Simply acknowledging that the Ms. Vaughn has made statements regarding her limitations and subjective symptoms is not enough to constitute proper analysis of her symptoms.

Ms. Vaughn makes several other arguments regarding her physical and mental RFC, as well as errors in weighing medical opinion evidence. However, because the ALJ erred in assessing Ms. Vaughn's sit/stand option, in analyzing her obesity in combination with her other impairments, and in analyzing her subjective symptoms, the court needn't address these arguments. Proper analysis of the sit/stand option and Ms. Vaughn's subjective symptoms may alter the rest of the decision. On remand, the ALJ should properly discuss and explain the sit/stand option, analyze her obesity and discuss its effects on her other impairments, and analyze Ms. Vaughn's subjective symptoms.

## CONCLUSION

Accordingly, the court GRANTS Ms. Vaughn's request for remand and REMANDS the Commissioner's decision for further proceedings consistent with this opinion.

SO ORDERED.

November 23, 2020                             *s/ Damon R. Leichty*
                                              Judge, United States District Court